C. M. Livingston, *Plaintiff in Error,* vs. Joseph Malever, *Defendant in Error.*
137 So. 113.
Division A.
Opinion filed October 21, 1931.

W. E. *Smith*, for Plaintiff in Error;

*Hampton & Greene*, for Defendant in Error.

BROWN, J.—This is the second appearance of this case before this court. See Malever v. Livingston, 95 Fla. 272, 116 So. 15. We there held that inasmuch as the declaration alleged that the plaintiff was employed by the defendant to *sell* certain property, the declaration should have alleged sufficient ultimate facts to show that there was a consummated sale, or procurement by the plaintiff from the purchaser of a binding written contract of purchase upon the terms authorized by the principal which the principal could enforce if necessary, and that for these reasons the demurrer to the original declaration should have been sustained. In the opinion, the distinction between a contract to sell real estate, and a contract to find a purchaser, which had been previously well settled by the decisions of this court therein cited, was pointed out. It was there held that where a broker was employed, not merely to find a purchaser, but to sell real estate, that in order to effect a sale within the meaning of such a contract, something more than a mere verbal agreement coupled with payment of earnest money was necessary; that it meant in the absence of contractual stipulation to the contrary, the consummation of a sale, that is, that the purchase money should be paid or secured pursuant to the broker's authority, and title transferred to the purchaser, thus completing the transaction; or if this were not done, that the broker must secure the execution and delivery by the purchaser of a binding written contract of purchase, upon the terms authorized by the principal, which the principal could enforce, if necessary.

As it is pertinent to the first question raised by the as-

signments of error now before us, we quote the followng paragraph from our former opinion:

"But, contends the defendant in error, the doctrine above set forth does not apply to this case, because the broker here produced to his principal a customer not only ready, able and willing to purchase on the terms fixed and agreed to by the principal, but ready either to enter into a binding contract to that effect, or to consummate the verbal agreement of purchase and sale by accepting a proper deed and paying the cash agreed on, and giving mortgage on the property for the balance, and that in these circumstances he cannot be deprived of his right to his commission by reason of the transaction failing on account of the fault of the principal in refusing to complete the transaction or to enter into a binding written contract, embodying the terms of the oral agreement of sale. (See, in this connection, 9 C. J. 623. 'What more,' says the defendant in error, 'could the broker do to effect a sale; must he be required to insure that the principal will not change his mind, and back down, or in any way refuse to perform his part?' If we concede for sake of argument, without deciding the point (which the state of the record would not warrant), that this contention is based upon a proposition legally sound, it would not avail the defendant in error here, because there is no foundation laid therefor in his pleading, and probata without allegata is not sufficient. In fact, under the declaration in this case, even liberally construed in favor of the plaintiff, evidence in support of such a contention was not relevant or admissible."

The mandate of this court on the former writ of error was filed in the trial court on April 12, 1928, and on April 21, 1928, the plaintiff, with leave of the court, filed an amended declaration, which alleged that the defendant, being the owner of certain described real estate in Ocala, Florida, employed the plaintiff, a Real Estate Broker, "to sell said property, that is, to find a purchaser that would pay $50,000.00 for said property," etc. The lower court sustained a demurrer to this amended declaration

upon the theory that this allegation was still one, merely alleging that the plaintiff was employed to *sell* the property described, and that, as the remainder of the declaration did not show that the plaintiff broker had effected a consummated sale of the property or procured from his customer a binding contract of purchase, the declaration was subject to the demurrer interposed.

As to the first propostion, the learned Trial Judge was in part, eminently correct. The allegation of the declaration that the defendant employed the plaintiff "to sell said property," is a factual allegation as to an important term in the contract, the legal meaning of which has been well settled. The words immediately following this allegation, "that is, to find a purchaser," is in the nature of a construction by the pleader of the meaning of the term of the contract in this regard which is at variance with the well settled legal meaning, as plainly pointed out in our former opinion in this case. Under the rule that a pleading should be construed most strongly against the pleader, the trial court was fully justified in holding in an able opinion accompanying its order, that the amended declaration must be construed as alleging a contract of employment to *sell* the property rather than a contract merely to find a purchaser. It follows therefore that, under this allegation in the declaration, the plaintiff broker became obligated to effect a completed sale of the property or to procure a binding written contract from the purchaser, as above pointed out.

But the difficult question with regard to this declaration is whether or not the remaining allegations show such a waiver by the defendant of a full performance of the obligation resting upon the plaintiff as to entitle the plaintiff to a recovery as for a full performance on his part. The amended declaration is not predicated upon any right of the plaintiff to recover in general assumpsit the value of his services rendered in a part performance of

the contract, but it is based upon the contract and seeks to recover the full commission provided for by the contract.

The additional allegations of the amended declaration filed April 21, 1928, were to the effect that plaintiff was employed to sell, for $50,000.00, the said property upon terms and conditions to be fixed by the defendant with the purchaser, and agreeing to pay the plaintiff for such services the sum of $1000.00. That plaintiff procured a purchaser, ready, able and willing to purchase at the price aforesaid, and brought him to the defendant, and that, in the presence of defendant's son and his attorney, the defendant and the purchaser orally agreed on the terms and conditions for the sale and the purchase of the property at said price of $50,000.00; that the defendant then required payment of $1000.00 as earnest money to bind the oral agreement aforesaid, and accepted the purchaser's check for that amount, and that then he, the defendant, would have his attorney reduce the oral contract to writing and then the defendant and the purchaser would execute the same, which would be binding upon each of them to which the purchaser agreed; that the minds of the parties met, that the purchaser was acceptable to the defendant, and that although the purchaser was willing and anxious to execute a binding contract with the defendant on the terms and conditions agreed upon, the defendant thereafter refused to complete the sale of the property and returned, within a few days, to the purchaser, the said check for $1000.00, without a word of explanation, or objection, and without fault on the part of the plaintiff or the purchaser. That thereby the defendant became liable to the plaintiff in the sum agreed upon, $1000.00, which though requested, he had refused to pay.

It was held in Thompson v. Kyle, 39 Fla. 582, 23 So. 12, that, as regards conditions precedent, there must be

at least a substantial performance thereof in order to authorize the recovery as for the performance of the contract; but that an absolute repudiation of his part of the contract by one of the parties thereto prior to the time fixed by the contract for performance of the agreement of the other party or while the contract is being performed by such other within the time limit will entitle such other party to maintain an action of damages as for a breach of the contract, though not an action to recover as for performance of conditions precedent which were not in fact performed. But that is not exactly the question here presented. It is a well recognized principle in the law of contracts that the strict performance of a contract may be waived; that a person for whose benefit anything is to be done, may, if he pleases, dispense with any part of it, or of any circumstance in the mode of performance, and that where he is present to receive performance, whatever is not exacted is considered as waived, for if objections were made on the ground of those matters in which the proposed performance was deficient, these might have been supplied at the time, and therefore it is not proper to surprise the party who performed the act by an objection to the mode of performance, after his vigilance has been disarmed by apparent acquiescense. On the other hand, if the party expressly refused to dispense with any material part of the performance of the contract, and induces no misapprehension of the state of his intention, his motive for doing so, or the object he expected to accomplish by it, cannot be inquired into, nor should it be left to the jury to presume, contrary to the truth of the fact, that he would dispense with anything. 6 R. C. L. 990; 13 C. J. 670, 671; Williston on Contracts, Sections 676, 752, 842. A mere waiver of the strict performance on the part of the contract obligation does not amount to the substitution of a new contract, and in the case of a condition precedent, is equivalent to

the performance thereof at the stipulated time, and leaves the original contract intact. 13 C. J. 673; Carr v. Stockton, 84 Fla. 69, 92 So. 814. In our former opinion in this case, we cited 9 C. J. 623, which reads as follows:

"As a general rule, where a broker finds a customer able and willing to enter into a transaction on the terms proposed by the principal, he cannot, unless there is a special contract to the contrary, be deprived of his right to his commissions by reason of the transaction failing on account of some fault of the principal, such as by the principal refusing to complete the transaction, as where he refuses to complete a sale, purchase, exchange, or loan, unless he has good grounds for his refusal. But to entitle a broker to a commission for negotiating a transaction which failed of consummation, the failure must be due to the refusal or default of the principal, and not to some fault of the broker."

The above stated principle is fully sustained in Hart v. Pierce, 98 Fla. 1087, 125 So. 243, a case quite similar to the instant case.

See also Dotson v. Milliken, 209 U. S. 237, 44 Law. Ed. 768.

Obviously, where a broker's commissions are conditioned upon the consummation of a contract being negotiated, it must generally be performed by the parties thereto to warrant a recovery of his remuneration; but if the broker produces a customer who is ready, able and willing to buy on the terms fixed by the owner, and if full performance is prevented by the arbitrary action of the owner, the condition is thereby waived and the broker may recover his commission in spite of the fact that the contract is never consummated. Walker v. Chancey, 96 Fla. 82, 117 So. 705.

While the amended declaration filed April 21, 1928, may have been subject to motion for compulsory amendment in certain respects, and while the words, "that is, to find a purchaser," might have been stricken on motion, if one

had been made, yet it did not wholly fail to state a cause of action. While it was the duty of the plaintiff under his contract to procure either a consummated sale or the execution by the purchaser of a binding written contract, it was within the power of the defendant to relieve the plaintiff of the burden of reducing the contract to writing and securing the execution thereof, if he saw fit to do so, and according to the declaration, as we understand it, that is what he voluntarily agreed to do. If the declaration had not shown that defendant had thus relieved the plaintiff of this duty, it would have been subject to the demurrer.

If the declaration had shown that the consummation of sale had fallen through because of any default on the part of the plaintiff or the purchaser, of course, the plaintiff would not be entitled to recover. McGavock v. Woodlief, 61 U.·S. 221, 15 Law. ed. 884, 886.

While in many other jurisdictions the decided cases do not make the clear-cut distinction which has long been made in this jurisdiction between a contract to sell real estate, and a contract to find a purchaser, the almost universally recognized general principles of the law of contracts above adverted to, should and can be applied without in anywise impairing the well grounded distinction between the two classes of contracts referred to.

One other ground of demurrer was that this declaration failed to set forth the terms of sale which were alleged to have been agreed to between the defendant and the purchaser when the plaintiff brought them together. The contract as alleged was that the defendant employed the plaintiff to sell the property to a purchaser who would pay therefor $50,000.00 "upon terms and conditions to be fixed by the defendant with the purchaser, the said defendant not giving the plaintiff any information as to what his terms and conditions would be, or any authority to make any terms with anyone but reserved that right to

himself.'' In view of these allegations as to the nature of the contract, the declaration went far enough to state a cause of action in this regard when it alleged that the plaintiff broker procured a purchaser ready, able and willing to purchase at the price designated, and on the terms and conditions named by the defendant when the broker brought the parties together, which terms were fixed and agreed on between them, without specifically alleging the terms. A party is not required to plead the evidence which may become necessary to prove his case. It is only necessary, as a general rule, except where fraud is charged, to allege those ultimate facts which are material and essential to show a cause of action.

We conclude, therefore, that the court erred in sustaining the demurrer to the amended declaration filed April 21, 1928.

The second assignment of error questions the correctness of the court's order of November 16, 1928, sustaining the demurrer to the first count of plaintiff's last amended declaration, which was filed September 19, 1928. This count is substantially the same as the single count of the declaration filed April 21, 1928, above discussed, except that it alleges that the plaintiff was employed ''to sell'', and omits the words, ''that is, to find a purchaser,'' thereby removing any objection on that score. For the reasons above given, we think this count states a cause of action, and that the demurrer thereto should have been overruled. The same might be said as to the ruling of the court on the second count, which was similar. But if there was any error in sustaining the demurrer to the second count of the last amended declaration, it was error without injury, for in legal effect it was substantially the same as the first count.

The court correctly overruled the demurrer to the third count of this last amended declaration. This count was by its allegations based upon a contract by which the

plaintiff was employed *to find a purchaser* who would pay $50,000.00 for the property, for which services plaintiff was to receive a certain commission, and alleges that, on April 3rd, 1925, he found and produced a purchaser, ready, able and willing to purchase at the price and on the terms prescribed by the defendant, which were agreed on between the defendant and the purchaser, etc., and that defendant refused to pay the commission. This last declaration was filed September 19th, 1928, more than three years after the cause of action therein stated accrued.

The defendant filed several pleas, to this third count of the last amended declaration, each of which, in varying forms, set up the statute of limitations of three years, as a defense. On demurrer, the court held that these pleas were good, and the case by agreement was submitted to the court without a jury on the facts shown by the record, and the court rendered judgment in favor of the defendant.

The question argued by counsel is, did the third count of the amended declaration filed September 19th, 1928, setting up a cause of action arising more than three years before that date, relate back to the commencement of the suit so as to deprive the defendant of the bar of the statute of limitations?

In an able and lucid treatment of this subject in the case of La Floridienne v. A. C. L. R. Co., 63 Fla. 213, 58 So. 196, this court, speaking through Chief Justice Whitfield, said:

"Where a declaration is amended or a new count is added thereto, which is a mere restatement in different form of the same cause of action that was originally pleaded, the amendment or added count has relation to the beginning of the action in so far as it is affected by the statute of limitation. But when a cause of action set forth in an amended pleading in a pending litigation, is new, different and distinct from that originally

set up, there is no relation back. The new pleading is equivalent to the bringing of a, new action, and the statute of limitation runs against the new cause of action to the time it is introduced into the pleading. Under the statutes and liberal rules of the courts, amendments of defects and errors in pleadings are liberally allowed 'for the purpose of determining in the existing suit the real question in controversy between the parties.' And when the amendment brings in new matter arising out of 'the same general transaction or occurrences,' it may not be a departure in pleading. But the statute and rules allowing amendments do not give such amendments the benefit of the legal fiction of relation back to the beginning of the action, so as to deprive a defendant of a right to the bar of a statute of limitations. The general rule is that amendments to pleading, without regard to the time or stage of the cause at which they are introduced, have relation as to the commencement of the suit, or to the time when the matter could have been pleaded originally. But relation is not imputed, if it would deprive a party against whom the amendment is made of any substantial right. If an amendment of a complaint introduces new matter or a new claim, as to which the statute of limitations has perfected a bar, the bar cannot be avoided by the legal fiction of relation by referring the amendment to the commencement of the suit. Steiner v. Bank, 115 Ala. 387, 22 So. 32; Nelson v. First National Bank, 139 Ala. 578, 36 So. 707; Morh v. Lemle, 69 Ala. 180; City of Kansas City vs. Hart, 60 Kan. 684, 57 Pac. 938; Flanders v. Cobb, 88 Me. 488, 34 Atl. 277, 51 Am. St. 410.'' See also the later case of Gibbs vs. McCoy, 70 Fla. 245, 70 So. 86.

An interesting treatment of this subject will be found in 17 R. C. L. 814-822 and 37 C. J. 1068-1080. Generally speaking, the rule governing this subject seems to be well settled and very much the same in most jurisdictions, but on account of the differences in their application in particular cases, owing in many instances to varying pro-

visions of statutes relating to amendments in the different states, it is hard to reconcile many of the decisions.

One of the leading cases in this country on this question is the case of Nelson v. First National Bank of Montgomery, 139 Ala. 578, 36 So. 707. This case was cited with approval in the Florida case above quoted from. It was held in that case that whether an amendment to a declaration relates back to the commencement of the suit, so as to defeat the bar of the statute of limitation against the cause stated in the amendment, is to be determined by the common-law rule against departures in pleading. In the opinion in that case, which was written by Justice Dowdell, afterwards Chief Justice of that court, it was said that if the amendment constituted a departure in after pleading at common-law, it would relate back so as to defeat the bar of the statute of limitations. It was said in that case, quoting from Stephen on Pleading, that a departure in pleading at common law takes place "where a party deserts the ground that he took in his last antecedent pleading and resorts to another." And again, quoting from an early Alabama case, it was said:

"'A departure in pleading is said to be when a party quits or departs from the case or defense which he has first made, and has recourse to another; it occurs when the replication or rejoinder, etc., contains matter not pursuant to the declaration, or plea, etc., which does not support and fortify it. It is quite plain, we think, that neither the second nor third count, here introduced by way of amendment, is 'pursuant' to the first count, which constituted the original complaint, nor did it 'support or fortify' it, but, on the contrary, there was clearly a quitting or departure from the ground of liability as stated in the first count. * * *

\* \* \* \* \* \* \* \* \*

* * * "While this criterion of determining the character of amendments with reference to the principle of relation back to the commencement of the suit has not

heretofore been expressly stated by this court, it may here be observed that, in those cases where it was held that the amendment did not relate back so as to cut off the bar of the statute, the amendments were such as were violative of the common-law rule against departure in after-pleading. On the other hand, in those cases where the amendment was held to relate back, the new matter introduced presented no new claim or right arising out of the same general transaction, nor change of ground from that originally laid in the complaint, but merely stated, in varying forms of expression, the same claim or right in order to meet the different phases of the testimony, and without changing or departing from the original ground of liability; the new matter so introduced being within the lis pendens, supporting and fortifying the original complaint, and leaving the issue unchanged.''

It is said by some of the authorities that one of the tests by which it is determined whether an amended pleading is for the same or for a different cause of action stated in a former pleading is whether the same evidence will support a judgment rendered upon either; that is, would the same evidence, unobjected to, sustain the substantial averments of both counts. 17 R. C. L. 815. It might be noted here that ordinarily the evidence necessary to prove a count alleging an employment to *sell* real estate might be sufficient to prove a count alleging employment to *find a purchaser*, for in all or most cases, in order to prove the count alleging employment to *sell*, the plaintiff would have to prove that he found a purchaser to whom he did sell, and either fully consummated the sale, or secured from the purchaser a binding contract of purchase, unless his employer had waived performance of the latter, or prevented it, as above pointed out. But the reverse is not true; that is, a count based on employment to *sell* would not ordinarily be proven by evidence that the plaintiff had merely found and produced a purchaser, ready, able and willing to buy on the terms fixed by the de-

fendant. So it cannot be said that the same evidence would sustain the substantial averments of both counts. And on pages 816-817, 17 R. C. L., it is said:

"The doctrine of the relation back of amendments to the commencement of a suit is a fiction of law, and should never be applied when it will operate to cut off a substantial right or defense to new matter introduced by the amendment to the complaint, though connected with the original cause of action. Therefore, where the amendment introduces a new claim not before asserted, it is not treated as relating back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a different cause of action, and the statute continues to run until the amendment is filed; and this rule applies although the two causes of action arise out of the same transaction. In determining whether an amendment to a complaint asserts new matter or a new claim the true test is whether the matter set up in the amendment amounts to a departure in after-pleading. If the matter introduced by way of amendment, although it be such as might have been joined in a different count in the original complaint, introduces a new claim or a new cause of action, requiring a different character of evidence for its support, and affording a different defense from that to the cause as originally presented, it will not relate back to the commencement of the suit, so as to prevent the plea of the statute to the new matter thus introduced." (Citing the Alabama case above quoted from).

All of the several previous declarations filed in this cause alleged and sought to recover upon a contract of employment by the defendant of the plaintiff to *sell* the real estate described in the declaration, whereas the said third count of the last amended declaration, to which the statute of limitation was pleaded, alleges and seeks to recover upon a contract of employment by the defendant of the plaintiff to *find a purchaser* for said real property, which is not the same contract, or ground of liability,

as set forth in the original and previous amended declarations or any count thereof filed prior to the expiration of the three-year period, and while it may have arisen out of the same transaction, it nevertheless constitutes a new and different ground of liability, a different sort of claim, upon a different and distinct contract, imposing different obligations, and requiring in some important respects different, or at least less evidence for its support than said previous counts, which cause of action, as set forth in said third count of the last amended declaration, did not accrue within three years before the filing of the same. The trial court, in the light of the above authorities, would have been justified in upholding the sufficiency of said pleas of the statute of limitations, as against the demurrers thereto, unless paragraph 3 of section 4648 C. G. L., would lead to a different conclusion in a case of this kind. This statutory provision, derived from an act adopted in 1828, reads as follows:

"3. Action after Reversal of Plaintiff's Judgment.* If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal or writ of error, the plaintiff, or, if he die and the cause of action survives, his heirs or representatives, may commence a new action within one year after the reversal. (Nov. 10, 1828, page 16)."

This third count, alleging employment to find a purchaser, filed as an amendment to the original declaration after the plaintiff's judgment thereon had been reversed, was, in the opinion of a majority of the court, the equivalent of a new action within the meaning of the quoted statute, and while it alleges a different claim based on a different contract in certain respects, yet it is one which might have been sustained by the evidence, or a part of the evidence, introduced by the plaintiff in support of his original declaration charging a contract of employment to sell, and is apparently based upon the same transac-

tion. Upon these considerations, and in view of the doctrine that statutes of this sort are remedial and should be liberally construed (37 C. J. 1084), the majority of the court are of the opinion that section 4648 applies and saves the bar of the statute of limitations of three years, or suspended the running of said statute during the pendency of the suit, up to the time of its reversal and for one year thereafter, and that therefore the court below erred in overruling the demurrers to the pleas of the statute of limitations addressed to said third count, which count was filed within a year after the reversal of plaintiff's judgment.

The writer, however, is of the opinion that the third paragraph of said section 4648 does not apply, but concurs in the reversal of the judgment now before us because of the action of the court in sustaining the demurrers to the amended declaration filed April 21, 1928, which action the writer, and the majority of the court, deem erroneous for the reasons above stated.

The writer is of the opinion that the quoted statutory provision does not apply, even though the filing of the amended third count be deemed the equivalent of the "commencement of a new action", because the writer thinks that the new action allowed by the statute must necessarily mean a new action based on the same claim or cause of action as that sued on originally. Therefore a new action based on a contract to find a purchaser, as set up in the third count filed after reversal, is not the same claim or cause of action originally sued on, which was based on a contract to sell. In 37 C. J. 1086, it is said (citing numerous authorities) that: "In order that the second action may be deemed a continuation of the first, the cause of action must be the same in both cases. This does not mean that the second suit must be a literal copy of the first, or that the same form of action should be adopted. A new action of any kind is permitted, hav-

ing for result the same relief as was sought in the original action. The court will not presume that the first suit was for the same cause of action as the second; but plaintiff must establish the identity of the causes of action in the two suits, ordinarily by the record, and it cannot be shown by evidence aliunde.''

The identical question here presented does not appear to have been heretofore considered by this court, although this paragraph of the statute has been considered in several cases, namely: Doyle v. Wade, 23 Fla. 90, 1 So. 516; Giles v. Wilmott, 77 Fla. 158, 81 So. 106; Henderson v. Chaires, 35 Fla. 423, 17 So. 574; Erickson v. Insurance Co., 66 Fla. 154, 63 So. 716; Reinschmidt vs. Crosby, 98 Fla. 365, 123 So. 755.

There was a motion filed in this case on May 10, 1929, to be allowed to amend the declaration by adding the common counts, which motion was denied. This action of the court was not assigned as error, nor was it argued in the briefs. It is therefore not incumbent upon us to consider the same.

For the reasons above stated, the judgment must be reversed.

Reversed and remanded.

BUFORD, C.J., AND ELLIS, J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.